**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

September 20, 2018

*By ECF and Hand Delivery*
The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Josefina Salas*
            18 CR 418 (GWG)

Dear Judge Gorenstein:

I write in advance of Ms. Salas' sentencing, scheduled for October 1, 2018. On June 14, 2018, Ms. Salas pleaded guilty to the misdemeanor offense of violating 18 U.S.C. § 1701—obstructing the mail—which carries a maximum punishment of 6 months' imprisonment or five years' probation.

As attested to in the beautiful attached letters from Ms. Salas' adult children and daughter-in-law, Josefina Salas' life of 63 years has be defined by her role as a mother and caretaker. Since she was a teenager she has been taking care of others. As a young girl in Ecuador, she cared for her brothers after her parents immigrated to the United States. Then, when she had children, she cared for them alone after her first husband's tragic and untimely death. In the United States, to where she fled to escape her second husband's physical abuse, Ms. Salas raised her five surviving children as a single mother. For six decades, with grace, strength, and poise, Ms. Salas has done little else than provide for her offspring, often under extremely difficult circumstances.

In the twilight of her age, Ms. Salas made a terrible mistake—her first and only violation of the law in her six-decade life—and stole mail from the United States Service Processing and Distribution Center at which she worked. She retained for herself a few of the parcels that she stole and gifted the rest to her family. This terrible, nearly inexplicable lapse in judgment already has cost Ms. Salas so much. She lost her job at the Post Office at which she had worked

Judge Gorenstein                                            September 20, 2018
Page 2 of 6

       Re: *United States v. Josefina Salas,* 18 CR 418 (GWG)

for almost 20 years and from which she derived self-worth and a sense of independence, both of which were particularly important for her as she aged. She now has a criminal conviction. She is ashamed and humiliated in front of her beloved children and grandchildren. Her already declining health has suffered in the face of the attendant stress of the pending prosecution. And, she will owe a restitution of $20,000.

Based on Ms. Salas' advancing age, her otherwise spotless record, her personal characteristics, her genuine remorse and the negative consequences she has suffered already, we respectfully submit that the Court should impose a sentence of no longer than one year probation.

## BACKGROUND

Ms. Salas was born in 1951 in Guayaquil, Ecuador, the nation's main port city. Both of her parents were factory workers. When Ms. Salas was 16 years old, her parents left Ecuador in search of better financial opportunities in New York City. Ms. Salas was left alone to care for her three younger brothers. She cooked for herself and her brothers, took care of the cleaning, and made sure everyone got to school.

Ms. Salas' mother and father found work in factories in New York. However, the little money they could afford to send to their children back home was not nearly enough. Still a girl, Ms. Salas was forced to begin working. To support her younger brother, Ms. Salas sold baked goods and other homemade foods to larger stores for a small profit. Ms. Salas, in essence, became a single mother at 16 years old.

Ms. Salas was 18 years old when she met Julio Alvarado, the man with whom she would share her first serious romantic relationship. Julio was in his late-30s and working in a soda factory when the two met. Julio helped Ms. Salas with her bills and eventually moved in with her. The couple was deeply in love. They had four children together, but sadly only one of them survived childhood. Three of the four children died from either accidents or illnesses.

Ms. Salas' emotional distresses did not stop with the loss of her young children. Five years into their relationship, Julio died of a heart attack. Ms. Salas again was left alone to care for her three brothers and her only surviving and first born son, Julio Alvarado, Jr.

Five years after Julio's passing, Ms. Salas met Joaquin Carvajal, with whom she hoped to rekindle the type of relationship she enjoyed with Julio. She was

Re: *United States v. Josefina Salas,* 18 CR 418 (GWG)

wrong. Carvajal worked in the ports of Guayaquil and was 13 years Ms. Salas' senior. The couple had two children: Joaquin, Jr. and Sara. Carvajal was jealous and possessive. His abuse began with offhand comments about her leaving the house and spiraled into tyrannical restrictions. Carvajal would not allow Ms. Salas to leave the house without him or without his permission. He would not allow her to wear makeup. He would not even let her look out the window because he didn't want her looking at other men. He would hit her if she tried to talk back or disobey, making sure to only hit her below the neck so that no one would know.

Ms. Salas silently endured the abuse for years until she finally shared her secret with her mother. Alarmed, Ms. Salas' mother insisted her daughter plan her escape; an escape that had to include leaving Ecuador. From New York, Ms. Salas' mother initiated the necessary paperwork to legally bring Ms. Salas and her three children to the United States. Ms. Salas was 32 years old and forced to leave behind the only country she had ever known. For months, Ms. Salas kept her plan a secret, not even telling the children. If Carvajal found out, Ms. Salas was scared he would have killed her. On the day of her trip, Ms. Salas packed a few things for herself and her children and rushed to the airport while Carvajal was away from home.

When Ms. Salas arrived in New York, she moved in with her mother in the Mott Haven neighborhood of the Bronx, the only neighborhood in the United States in which Ms. Salas has ever lived. Ms. Salas found work in a sewing factory. After six months of hard work in the factory, Ms. Salas had enough money for her own place. She moved herself and her three children into a different apartment in the same building as her mother. She continued her factory work in order to pay her rent, raise her three kids, and provide for their basic needs. Often times it was difficult for Ms. Salas to provide everything her children needed, but she eked out a safe and secure life for her family.

A few years later, Ms. Salas met Hernan Rojas, with whom she had two children: Hernan Jr., and Jamie. The couple never lived together. With the addition of two more children, Ms. Salas' already strained expenses got significantly tighter. She was still a single mom, and now to five children. She applied for a more lucrative position at the United States Postal Service (USPS) and was elated when she heard news that she was accepted for the job. She worked at USPS from 1999 until her December 2017 arrest.

Re: *United States v. Josefina Salas,* 18 CR 418 (GWG)

Ms. Salas worked the night shift as a mail sorter for USPS for decades. Although she was grateful for stable work, it was difficult for her to provide anything more than the basics for herself and her children. She worked hard and consistently at USPS and any other odd jobs she could find, including cleaning the apartment building where she lived for a small fee. Ms. Salas was able to raise her children into productive members of society with her humble USPS salary supplemented by the income of her odd jobs.

As Ms. Salas got older and closer to retirement age, her ability to work long hours and multiple jobs dwindled. In her 60s, Ms. Salas' health declined. Today, her physical health is very poor. She has bilateral secondary osteoarthritis of the knee. She also has diabetes and high blood pressure. She requires frequent medical appointments and close monitoring.

With age, Ms. Salas' worries also have expanded to include her beloved mother. Sara Salas is 84 years old, ill, and living alone in Ecuador. Mrs. Salas has Alzheimer's and suffers from severe diabetes.

### OFFENSE CONDUCT

Even after her children grew up and began independent lives, Ms. Salas still considered herself their primary caretaker and continued to take great pride in ensuring their well-being. Ms. Salas is the type of person to think about the needs of another person before her own, especially when it comes to her family. A desire to continue providing for her children, coupled with a lack of ability to maintain income enough for all of them, lead to her offense conduct.

Part of Ms. Salas' duties as a mail handler for USPS was to move postcons filled with mail to their designated areas. In the past year of her work at USPS, Ms. Salas made a decision she wholeheartedly regrets to steal mail from the postcons.

When she was arrested in this case, Ms. Salas candidly admitted all of her conduct to the agents. Ms. Salas admitted to opening mail not addressed to her, stealing letters and parcels from the U.S. mail, and placing the contents she stole into her satchel and personal bags. Ms. Salas admitted that she started stealing due to financial and personal hardships. She admitted to stealing money, gift cards, and parcels containing jewelry, clothing, and electronics. She admitted that she used the stolen goods herself, gave some to her children, other family members, and friends. She stated that she never negotiated the checks or money orders. Ms. Salas also provided a written statement. Ms. Salas has taken responsibility for her wrongful actions.

Re: *United States v. Josefina Salas,* 18 CR 418 (GWG)

Ms. Salas always has seen herself as a provider. When she found herself advancing in age and in a positon where she was unable to provide her grandchildren and her children with the things they needed and wanted, she crumbled. She knew this was wrong, but she chose to commit the offense, in large part, so that she could maintain her identity as a caretaker. She is extremely embarrassed by her choices.

### THE COURT SHOULD IMPOSE NO LONGER THAN A ONE YEAR TERM OF PROBATION

Ms. Salas has pleaded guilty to a Class C misdemeanor, a petty offense to which the Guidelines do not apply. U.S.S.G. § 1B1.9. Thus, in determining a just sentence, the Court need consider only the factors set forth in 18 U.S.C. § 3553. Section 3553(a) directs courts to weigh "the nature and circumstances of the offense and the history and characteristics of the defendant" and then impose the minimum sentence necessary (a) to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes by the defendant; and (d) to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553; *see also United States v. Ministro-Tapia,* 470 F.3d 137, 142 (2d Cir. 2006) ("[I]f a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher [one]."). Here, the § 3553(a) factors overwhelmingly support sentencing Ms. Salas to no more than a modest period of probation.

In connection with Ms. Salas' history and characteristics, the letters submitted on Ms. Salas' behalf illustrate the extent to which her character transcends the offense conduct. "When I think of my mom I think of a hardworking woman, a woman who always made it her priority to make sure here kids were okay. No matter what situation of financial downfalls my mother has endured, she always put us first." Letter of Jamie Rojas, Exhibit A. "My mom has always played it straight, stayed out of trouble, paid her taxes, helped others in need even though she barely had enough for herself. She always believed in family values and being a law-abiding citizen. ... If she was the one who had the chance to help someone less fortunate then her she would make it happen and never demanded or expected anything in return. She is a wonderful and phenomenal human being." Letter of Herman Rojas, Exhibit C. Her family also

Re: *United States v. Josefina Salas,* 18 CR 418 (GWG)

uniformly describe Ms. Salas' genuine remorse and contrition, which are further underscored by her post-arrest confession.

For her conduct, Ms. Salas already has suffered and been punished. Section 3553(a)'s punitive objectives are readily satisfied by the shame Ms. Salas feels and the stress and consequences of the prosecution she already has and will continue to endure. Just the loss of her job satisfied that goal. In her advanced age, with her lack of skills, and now with a criminal record, Ms. Salas does expect to be able to work again. Ms. Salas will have to be supported by her children for the rest of her life. For Ms. Salas, a woman who worked her whole life to support others, this new reality is both life changing and excruciating.

## CONCLUSION

Ms. Salas dedicated her entire life to being a mother and a caretaker. Ms. Salas raised her five children, her brothers, and helped raise her grandchildren. Ms. Salas is a thoughtful, kind, gentle, and selfless woman who gave everything for her children and her community, despite her humble economic means. Caring for her family is the most significant aspect of Ms. Salas' identity.

Against this backdrop, a sentence of no longer than a one year term of probation is just and appropriate.


Respectfully submitted,

/s/ Julia Gatto
Julia Gatto
Assistant Federal Defender
212.417.8750

cc: AUSA Dominic Gentile (via ECF and hand delivery)